# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 16-498V
(to be published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | |
| HEATHER WRIGHT, | * | |
| *as Mother and Natural Guardian of minor* | * | |
| *child, B.W.,* | * | |
| | * | Chief Special Master Corcoran |
| Petitioner, | * | |
| | * | Filed: November 9, 2022 |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH AND | * | |
| HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Leah V. Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Traci R. Patton*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION GRANTING IN PART MOTION FOR FEES AND COSTS AWARD[1]

On April 21, 2016, Heather Wright, as legal representative of her child, B.W., filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] ECF No. 1. Petitioner alleged that the measles-mumps-rubella ("MMR") vaccine B.W. received on March 28, 2014, caused him to develop immune thrombocytopenic purpura ("ITP"). Pet. at 1.

---

[1] Although I have not formally designated this Decision for publication, it will nevertheless be posted on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

The claim was litigated for several years. After a 2017 hearing (mostly focusing on a novel theory of severity), I issued a decision dismissing the claim for failure to satisfy the severity requirement. *Wright v. Sec'y of Health & Hum. Servs.*, No. 16-498V, 2019 WL 1061472 (Fed. Cl. Spec. Mstr. Jan. 18, 2019). Petitioner appealed my determination, and her Motion for Review was initially granted. *Wright v. Sec'y of Health & Hum. Servs.*, 146 Fed. Cl. 608 (2019). I subsequently awarded compensation. *Wright v. Sec'y of Health & Hum. Servs.*, No. 16-498V, 2020 WL 6281782 (Fed. Cl. Spec. Mstr. Sept. 25, 2020). Respondent thereafter also appealed, however, and the Federal Circuit reversed the Court, reinstating my initial dismissal decision. *Wright v. Sec'y of Health & Human Servs.*, 22 F. 4th 999 (Fed. Cir. 2022).

Petitioner has now filed a motion for a final award of attorney's fees and costs. Motion, dated October 5, 2022 (ECF No. 86). Petitioner has not previously been awarded any fees in this matter. Petitioner requests a total of $315,247.06 ($296,314.50 in fees, plus $18,932.56 in costs) for the work of multiple attorneys, including Ms. Leah Durant, Mr. Michael Milmoe, Mr. Richard Armada, and paralegals, from November 2015 to the present date—a seven-year timeframe. ECF No. 86 at 4–36.

Respondent reacted to the fees request on October 19, 2022. *See* Response, October 19, 2022 (ECF No. 87). Respondent is satisfied that the statutory requirements for a fees and costs are met, but argues that the requested amount is patently unreasonable and excessive. *Id.* at 1. Even if Petitioner had ultimately been successful, Respondent reasons, the total damages award she received before the Federal Circuit appeal—less than $30,000.00 (ECF No. 78)—was relatively insubstantial, making it difficult to understand how Petitioner incurred more than ten times that amount to prosecute the claim. *Id.* at 1, n.1 Respondent ultimately defers the award's calculation to my discretion, however, and has not proposed an alternative amount. *Id.* at 2–4.

Petitioner filed a Reply on November 2, 2022, arguing that Respondent has not questioned the claim's reasonable basis, and also has not substantiated how the amount requested is "patently unreasonable." *See* Reply, November 2, 2022 (ECF No. 89), at 1–2. Petitioner disputes Respondent's objections to the disparity between the amount that had been awarded in damages versus the requested fees and costs, deeming it not a basis for reduction. *Id.* at 1, n.1. It is not unexpected, Petitioner maintains, that vaccine cases resulting in protracted proceedings (especially when cases have included remand and appellate proceedings) can generate large fees, and there is nothing in the Vaccine Act or its legislative history suggesting fees must be commensurate to the entitlement award. *Id.* Petitioner otherwise notes that Respondent raised no specific objections as to the time entries, associated hourly rates, or litigation expenses. *Id.* at 2. Petitioner also filed an affidavit of counsel regarding attorney's fees and costs on November 7, 2022, addressing the unique factual and legal complexities of this matter, as an explanation for the magnitude of the request (ECF No. 90).

2

For the reasons set forth below, I hereby **GRANT IN PART** Petitioner's motion, awarding fees and costs in the total amount of **$282,372.35**

## ANALYSIS

I. **Petitioner's Claim had Reasonable Basis**

Although the Vaccine Act only guarantees a reasonable award of attorney's fees and costs to *successful* petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, *establishing reasonable basis does not automatically entitle an unsuccessful claimant to fees*, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or even denied entirely.

A claim's reasonable basis[3] must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. Reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis

---

[3] Because this claim's good faith is not in dispute, I do not include a discussion of the standards applicable to that fees prong.

standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[4]

Petitioner's claim was ultimately unsuccessful, but I find there was more than a sufficient objective basis to entitle her to a fees and costs award. The core injury was never disputed – only whether severity under the Act was established. And that question was not only litigated in good faith, requiring a hearing on Petitioner's theory (which asserted that lingering psychologic damage to B.W. established severity), but resulted in an initial appeal favorable to Petitioner. The eventual outcome of the case does not negate its objective basis. Thus, a final award of fees and costs in this matter is permissible. And because I find no reason otherwise to deny a fees award (although for the reasons stated below, some reductions are in order), I will allow one herein.

## II.   Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her attorneys, based on the year in which work was performed:

---

[4] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

4

|  | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|---|---|
| **Leah Durant (Attorney)** | $350 | $350 | $365 | $377 | $380 | $395 | $420 | $441 |
| **Michael Milmore (Attorney)** | - | - | - | $455 | $464 | $484 | $509 | $525 |
| **Richard Armada (Attorney)** | - | - | - | - | - | - | $400 | $420 |
| **Paralegals** | $140 | $140 | $145 | $150 | $150 | $160 | $165 | $173 |

ECF No. 86 at 4–36.

Ms. Durant and her partners and associates (who practice in Washington, D.C.) are (literally) "in forum," and are therefore entitled to the rates established *McCulloch*. *See Dillenbeck v. Sec'y of Health & Human Servs.*, No. 17-428V, 2021 WL 777166 at *2 (Fed. Cl. Spec. Mstr. Jan. 25, 2021)). The rates requested for Ms. Durant, Mr. Milmoe, and Mr. Armada (as well as the paralegal work performed in this case) are also consistent with what has previously been awarded in accordance with the Office of Special Masters' fee schedule.[5] *See Nichols v. Sec'y of Health & Hum. Servs.*, No. 17-1861V, 2021 WL 1235672, at *2 (Fed. Cl. Spec. Mstr. Mar. 10, 2021). I thus find no cause to reduce them in this instance. And I deem the time devoted to the matter largely reasonable, and thus will not disallow reimbursement for any specific tasks (although I am performing one overall, across-the-board reduction, as noted below).

### III.   Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special

---

[5] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited Mar. 22, 2021).

masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $18,932.56 in outstanding costs, including medical record retrieval costs and costs associated with the work of two experts, Catherine Shaer, M.D., and Guy W. Jordan, Ph.D. ECF No. 86 at 39. Dr. Shaer testified at the hearing and authored one expert report. ECF No. 22-1. She billed $7,421.67 in total, at a rate of $250 per hour for most tasks, but on one occasion she has billed $125.00 per hour for travel and on another occasion billed $240.000 on March 5, 2016, for no apparent reason. ECF No. 86 at 47, 64. Special Masters have previously found that Dr. Shaer's hourly rate of $250.00 was appropriate for her services. *Howard v. Sec'y of Health & Hum. Servs.*, No. 16-894V, 2017 WL 4367159, at *3 (Fed. Cl. Spec. Mstr. Sept. 8, 2017). I find the total amount incurred for her services was wholly reasonable for the work performed.

Dr. Jordan conducted an evaluation and wrote a report summarizing his findings, although he did not testify at the hearing. ECF No. 45-1). According to Petitioner's Motion (ECF No. 86 at 39), he billed $2,500.00. However, there is no specific rate offered, or description of the work he performed, nor a bill from Dr. Jordan regarding the requested amount. Since Petitioner did not substantiate the requested amount, I am awarding only $1,000.00 for Dr. Jordan's expert assistance. All other costs were reasonably incurred in this matter and are eligible for reimbursement.

### III.     Across-the-Board Reduction to Account for Excessive Fees

As noted above, Respondent deems the total award requested to be grossly excessive in light of the claim's outcome. Indeed, even if Respondent's appeal had not been taken, fees and costs would still have been a multiple of the sum I originally awarded. Respondent has not, however, endeavored to propose an alternative fees award, and does not seem to object to the concept of *any* award herein – just that an award above $300,000.00 is improper.

There are two considerations relevant to Respondent's objection. On the one hand, I deem the dispute in this case to have been reasonably litigated by both sides. The matter simply became protracted, featuring a somewhat short hearing, a motion for review, and then (once damages were determined) a Federal Circuit appeal. The underlying issue that animated the claim as well as its appeals—how does a petitioner alleging a vaccine-caused case of ITP prove severity, given that ITP can easily be treated in short order of its discovery?—remains somewhat unresolved despite the outcome of this case, and has even prompted another Federal Circuit appeal. *See Leming v. Sec'y of Health & Hum. Servs.*, No. 18-0232V, 2019 WL 5290838, at *3–5 (Fed. Cl. July 12, 2019), *review granted, cause remanded,* 154 Fed. Cl. 325 (2021), *reconsideration denied*, 2022 WL 3371016, at *2 (Fed. Cl. Jan. 26, 2022), *review denied,* 2022 WL 3444742 (Fed. Cl. Feb. 18, 2022), and *review denied, appeal filed,* 161 Fed. Cl. 744 (2022). And at no point did this claim

*lose* reasonable basis, with the process required to adjudicate fully the claim's merits taking several years. I cannot conclude that counsel acted irresponsibly simply because the potential outcome was limited, given the nature of the legal issues disputed.

On the other hand, even if the Act does not expressly provide for fees to be reduced when excessive attorney time is devoted to a matter resulting in a *de minimis* (or nonexistent) recovery, special masters can and should take such issues into account when determining whether to award fees to unsuccessful claimants. Indeed, it bears repeating: special masters are never *compelled* to award fees in unsuccessful cases, regardless of how the reasonable basis inquiry is resolved. *See* Section 15(e)(1) (special masters "shall" award fees in successful cases, but "may" award them in unsuccessful cases). The policy concerns that produced the Act's fee provisions are also relevant. Just as the mandatory award of reasonably-incurred fees in *successful* cases helps ensure an available and competent vaccine bar, the risk of reduction (or total denial) of fees in cases that fail encourages attorneys to take care in how much effort they devote to some matters (including cases where the likely recovery is modest).

Applying these considerations, I find that a modest blanket reduction in fees to be awarded is appropriate under the circumstances. Even though Petitioner's severity arguments were reasonably maintained, counsel could have known (perhaps as early as the Petition's filing) in assessing the claim's viability that the matter was not one warranting this level of attorney effort. ITP can easily be treated. Thus, a case like this one, where the injured child's ITP has been successfully addressed, and where the child was not still suffering from its after-effects from a purely medical standpoint, could be foreseen not to entail large damages—and thus counsel could have structured how the case was litigated accordingly (even taking into account an attorney's ethical obligations toward zealous representation). At bottom, the Vaccine Program exists to benefit the injured, *not their counsel* – and it is fair to place some burdens on counsel to avoid allowing claims to drift into situations where fees become disproportionate to the best potential outcome.

I will therefore apply a single, across-the-board reduction of **ten percent** to the amount to be awarded, or $31,374.71.[6] It is a reasonable exercise of discretion for me to make this reduction, in the context of determining the ultimate propriety of a fees award in an unsuccessful case. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1940, 76 L. Ed. 2d 40 (1983) (deeming "the important factor of the 'results obtained'" relevant to a fee award's magnitude)[7];

---

[6] 10 percent of the $313,747.06 total amount is a reduction of $31,374.71. Thus, $313,747.06 - $31,374.71 = **$282,372.35**.

[7] *Hensley* goes on to say the following:

> This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to

*Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993) (in determining a reasonable number of hours expended in any given case, a special master need not conduct a line-by-line examination of the fee application); *see also Westdale Northwest Ctr., LP v. United States*, 159 Fed. Cl. 851, 865-66 (2022) (reducing fees by 25 percent for lack of success on core claims); *Yang v. United States*, 156 Fed. Cl. 1, 8 (2021) (reducing total hours from 406.4 by 201.65 for unproductive work).

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT IN PART** Petitioner's Motion for Attorney's Fees and Costs, and award a total of **$282,372.35,** reflecting $266,683.05 in attorney's fees,[8] and $15,689.30 in costs[9] in the form of a check made jointly payable to Petitioner and her attorney, Ms. Leah Durant.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[10]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

prevail on claims that were unrelated to the claims on which he succeeded? Second, *did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award*?

461 U.S. at 434 (emphasis added).

[8] 10 percent of the $296,314.50 total amount of fees is a reduction of $29,631.45. Thus, $296,314.50 - $29,631.45 = **$266,683.05**.

[9] 10 percent of the $17,432.56 total amount of costs is a reduction of $1,743.26. Thus, $17,432.56 - $1,743.26 = **$15,689.30.**

[10] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.